**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

SHELTALEE TORRES, individually and
on behalf of all others similarly situated;

Plaintiffs,

v. CASE NO._____

CUBESMART LP, and CUBESMART
MANAGEMENT LLC, d/b/a Cubesmart
Self Storage,

Defendants.

_____**.**

## COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT AND DEMAND FOR JURY TRIAL

Plaintiffs, Sheltalee Torres, individually and on behalf of all others similarly situated who consent to their inclusion in this national collective action, brings this lawsuit against the above captioned Defendant pursuant to § 216(b) of the Fair Labor Standards Act ("FLSA"), against CUBESMART LP, and CUBESMART MANAGEMENT, LLC, (hereinafter referred to jointly and collectively as "Cubesmart" or "Defendants) for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* for failure to pay overtime compensation and any premium for all hours worked over forty (40) each week.

## INTRODUCTION

1. The Fair Labor Standards Act is our nation's foremost wage law. The overtime requirements of the FLSA were designed to eliminate "labor conditions detrimental to the

maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers..." 29 U.S.C. §202(a). To achieve its goals, the FLSA sets minimum wage and overtime pay requirements for covered employers. 29 U.S.C. §§206(a) & 207(a). It requires minimum wage and overtime pay for certain non-exempt employees. 29 U.S.C. § 213.

2. Plaintiff, Sheltalee Torres (hereinafter referred to as "Torres") worked for Defendants for a period of about 10 years until until his termination on or about October 3, 2020, working under the job title of "General Manager".

3. Plaintiff, like his fellow Managers, and who are members of this putative Class (aka the collective), worked at Defendants' self storage retail locations across the United States and its territories, were paid on an hourly basis and classified as non-exempt employees under the FLSA.

4. Defendants classified all Store Managers, Property Managers and General Managers as Non-Exempt from overtime wages pursuant to either State law or the FLSA. **5.** Plaintiff, like his fellow Managers in retail locations across the U.S. and its territories, in the past three (3) years preceding the filing of this complaint, and still to this day, were systematically denied any overtime pay for hours they worked in excess of forty (40) hours on behalf of Defendants.

**6.** Defendants maintained a common unlawful pay practice applicable to all Managers, requiring them to work more than 40 hours in a week without being paid a premium for all hours worked over 40 in each work week, performing all the laborious, non-exempt duties,

all for the purpose of increasing profits and saving many millions of dollars each year in labor costs.

7. Accordingly, Plaintiff, individually, and on behalf of all others similarly situated who consent to their inclusion in this collective action, sue Defendants for violations of the Fair Labor Standards Act for: (1) failing to pay the Plaintiffs and others similarly situated overtime compensation; and (2) failing to maintain and preserve accurate and true records of all hours worked.

8. CUBESMART LP, formerly known as U Store It Trust, operates and/or manages approximately 1246 stores, properties or locations across the United States and its territories.

## CLASS DEFINITION AND RELIEF SOUGHT

9. This collective action lawsuit is to recover from Defendants, overtime compensation, liquidated damages, prejudgment interest, and the costs and reasonable attorney's fees under 29 U.S.C. §216(b) on behalf of the Plaintiffs and all similarly situated persons composed of:

> All persons employed by CUBESMART LP, or CUBESMART MANAGEMENT COMPANY LLC, d/b/a Cubesmart Self Storage, as a General Manager, Property Store Manager, Store Manager and any other job title previously or currently used to describe the same positions at any self storage office or location in the United States and its territories, at any time within the three (3) years preceding this lawsuit to the day of trial.

## JURISDICTION AND VENUE

10. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, because this action involves a federal question under the Fair Labor Standards Act, 29

U.S.C., §§ 201-219, inclusive.

11. This Court has personal jurisdiction over this action because the Defendants are engaged in continuous business, from fixed office and retail locations within the State of Florida and is expected to be hailed into court in this State putusan to Florida's Long Arm Statute..

12. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. 1391(b) because acts complained of herein took place in this District in Jacksonville Florida.. **<u>THE PARTIES</u>**

13. At all times relevant to this action, Representative Plaintiff Sheltalee Torres resided in Jacksonville, Florida.

14. At all times relevant to this action, Torres and all other members of the proposed putative class or collective of similarly situated employees were employees of Defendants within the meaning of 29 U.S.C. § 203(e)(1).

15. Defendants, upon information and belief and reviewing its store postings, may now be retitling the General Manager and Store Manager positions to "Retail Store Associates", to remove the designation of "manager" from their job titles, as in fact, such positions were not managers as known under the FLSA.

16. Thus even job postings on Glassdoor indicate the store manager position is now called Retail Store Associate, and it appears the District Managers now are in charge of managing all the store locations and properties.

17. For purposes of the collective action, Plaintiff Torres herein by this Complaint and this statement, herein give his written consent to be a party to this action pursuant to 29 U.S.C. §

216(b).

18. At all times relevant to this action, Defendants employed Torres and all other Managers of

this proposed FLSA collective action as employees within the meaning of 29 U.S.C. § 203(g).

## DEFENDANT CUBESMART LP AND CUBESMART MANAGEMENT LLC

19. Defendant, CUBESMART LP, NYSE symbol (CUBE) is a foreign for-profit publicly traded

corporation, which owns and operates its CubeSmart Self Storage properties, stores or

locations across the United States and its territories, with its principal place of business and

corporate office located at 5 Old Lancaster Road, Malvern, PA 19355. Defendant also

managers properties or locations owned by third parties under the Cubesmart brand name.

Defendant can be served through its registered agent, CT Corporation System, 1200 S. Pine

Island Road, Plantation, FL 33324.

20. Defendant, CUBESMART MANAGEMENT LLC, is a foreign, for-profit corporation, and

wholly owned subsidiary of Cubesmart LP which owns and operates its CubeSmart Self

Storage properties, stores or locations across the United States and its territories, with its

principal place of business and corporate office located at 5 Old Lancaster Road, Malvern, PA

19355. Defendant also manages properties or locations owned by third parties under the

Cubesmart brand name Defendant can be served through its registered agent, CT Corporation

System, 1200 S. Pine Island Road, Plantation, FL 33324.

21. Defendants also manage other self storage properties or facilities under the brand name

CubeSmart, in addition to owning and operating its own retail store locations. As it says in its

filings and self created publications "Third-Party Management: As of June 30, 2020, the

Company's third-party management program included 719 stores totaling 48.0 million square

feet. During the three and six months ended June 30, 2020, the Company added 27 stores and 93

stores, respectively, to its third-party management platform.

22. As per the company website and other news published about the company, it has grown by

buying locations and other self storage companies across the US, and it boasts on its publications

"According to the 2020 Self-Storage Almanac, CubeSmart is one of the top three owners and

operators of self-storage properties in the United States.".

23. Based upon information and belief and from the CUBESMART LP Annual report or 10-k,

and other information, CUBESMART employed 2,621 property-level personnel more

throughout the United States at over 1246 stores or locations.

24. Given turnover, Plaintiffs believe there are upwards of 2400 or more members in this

proposed putative class whose rights are affected by this case.

25. Cubesmart conducts substantial business in the state of Florida and throughout the country

subjecting it to enterprise coverage under the FLSA.

26. Each of the Defendants individually, and jointly haad more than $500,000 in revenues for

the preceding three (3) years of 2018, 2017, and 2016.

27. At all relevant times, CUBESMART has been and continues to be an employer engaged in

interstate commerce and/or the production of goods for commerce, within the meaning of FLSA

29 U.S.C. §§ 206(a) and 207(a).

28. CUBESMART is subject to the FLSA as a matter of law under enterprise coverage. Page **6** of

**29**

29. Defendants are joint employers of Plaintiff and all others similarly situated, as they managed, controlled and directed the work of all managers across the US form a single corporate office. Defendants also jointly created the policies and practices complained of herein and together operate a single unified business enterprise.

30. Upon information and belief, Defendant Cubesmart LP is a Joint employer within the meaning and definition of the FLSA as it created and enforces the unlawful pay practices complained of as well as manages and oversees the subsidiary co-defendants, Cubesmart Management LLC from its single corporate office, with combined operations and employment practices and shared officers and managers of the subsidiary co-defendant. Together Defendants are herein referred to as Cubesmart and for a single Business Enterprise.

## **GENERAL ALLEGATIONS**

31. CUBESMART operates its corporate owned and third party managed store locations as a single and unified business enterprise.

32. Based upon information and belief, all Store Managers, General Managers, and Property Managers were, and are still, ultimately supervised by a CUBESMART District Manager who

oversees the management of the self storage locations and its staff, regardless of whether the stores are owned by Cubesmart or just managed under contractual agreement with other independent owners and corporations.

33. Thus all managers in this collective are employees of Defendants, and Defendants control and direct the work of all managers at all locations known as CubeSmart self storage locations.

34. Upon information and belief, at each storage location or property, CubeSmart had working a General Manager, and a Store Manager or Property Manager, and then overseen by a District Manager.

35. At Plaintiff's property or location, the only employees were himself and a "store manager", both of which were hourly, non-exempt employees.

36. Plaintiff was required to work a corporate schedule of 5 days per week, including weekends, working 8.5 hour days, while the store manager also worked 5 days per weeks on an alternative schedule such that on 2 days each workweek, Plaintiff was alone for 2 days and the Store Manager was alone for 2 days.

37. All Managers of Cubesmart are subject to the same overtime policies, the same classification as non-exempt employees, the same compensation plans, the same training, career paths, job titles, hierarchy, employment policies and procedures and receive the same employee manuals.. .

38. The jobs Defendants post demonstrate that the positions are identical and have the same job requirements and compensation plans across the US regardless of the location. See

https://storejobs-cubesmart.icims.com/jobs/search?ss=1&searchCategory=8723&mobile=false

&width=1613&height=500&bga=true&needsRedirect=false&jan1offset=-300&jun1offset=-24 0.

39. Defendants do not distinguish employees working at corporate owned properties or locations from third party owned locations, where Defendants staff employees and maange the location.

40. CubeSmart LP and CubeSmart Management LLC are joint employers over the putative class of similarly situated.

41. Based upon information and belief, the Store Manager and General Manager positions have similar job requirements and are identical for all stores, locations or properties across the United States and its territories.

42. Defendants historically have not required a four (4) year college degree or four (4) year college education as a condition or requirement for employment in Manager Positions; Plaintiff Torres and other known General Managers and Store Managers do not have a four (4) year college degree.

43. Plaintiff, and members of the Collective ("class") worked overtime hours on a regular and routine basis and were scheduled by Defendants to work a mandatory overtime work schedule of 42.5 hours per week, including being instructed not to leave until all job duties and responsibilities were completed.

44. Plaintiff and members of the collective or class were all required to be "on call", and to use their cell phones and personal telephone numbers for work purposes to field calls from vendors,

employees and customers while away from the office or beyond their work schedules.

45. Plaintiff and members of the collective or class were required to respond to all customers and vendors, or other employees telephone calls and emails while they were away from the office and beyond their scheduled shifts.

46. Plaintiff and members of the collective had to routeinly return to their locations or stores outside their work schedules to deal with issues, problems and emergencies.

47. Plaintiffs and members of the collective had to routeinly respond to telephone calls from employees, customers, and vendors outside their work schedules to deal with issues, problems and emergencies.

48. Plaintiffs and all other members of the putative class of similarly situated in this proposed collective action, are and were employees of Defendants within the meaning of 29 U.S.C. § 203(e)(1).

49. Plaintiffs and members of the Class were warned on routine against reporting or claiming overtime hours, and more than 40 hours per workweek despite the fact that Defendants, by and through its District Managers and other corporate officers, Human Resources Department were well aware that the position required them to work more than 40 hours per week to comp[lete all their job duties.

50. Plaintiff would be subject to disciplinary action, including termination of his job if the storers and locations did not meet certain company requirements, or if customers required services beyond their work schedules or during lunch breaks.

51. Plaintiff routinely had to work throughout his daily shift without an uninterrupted meal break, meaning that he routinely worked 42.5 hours of work without being paid a premium for all the overtime hours worked.

52. When Plaintiff was alone working in the store on the 2 days when the store manager was not scheduled to work those days, Plaintiff was not permitted to close the store, disregard phone calls or emails and take an uninterrupted 30 minute or more meal break.

53. Defendants knew that managers were working through meal breaks and not able to take uninterrupted meal breaks and thus were not provided bona fide meal breaks within the meaning and definition of the FLSA.

54. The FLSA requires that if a full time employee is not provided with an uninterrupted meal break of 30 minutes or more, all that time is compensable and is required to be paid. An uninterrupted meal break means "completely relieved of duty for the purpose of eating regular meals". See 29 C.F.R. § 785.19.

55. Plaintiff would take phone calls, meet with customers and work throughout his so-called meal breaks.

56. However, instead of clocking in and out for meal breaks, Plaintiff and other managers would go into the time tracking system and simply edit off overtime hours and input lunch break punches for lunch breaks they were not able to take.

57. Essentially, the Defendants had a De Facto policy that every manager is to deduct 30

minutes of work time from each and every work day, and input punches in and out for lunches even when they do not take bona fide lunch breaks in order to avoid incurring overtime hours on their time sheets.

58. During meetings and discussions with the District Manager, individually and also with other store managers and general managers present, the District Manger heard complaints about the inability to take lunches and that they were thus working overtime hours. In response the district manager would say you have to do whatever you need to to perform your job duties, service customers and cannot simply just shut the store down, turn off their cell phones and stop working for 30 minutes to break for lunch.

Page **11** of **29**

59. Despite complaints of working through meal breaks, the DM would continue to warn and stress to managers not to report more than 40 hours on their timesheets and would discourage and dissuade managers from reporting overtime hours.

60. Plaintiff and other managers were thus forced under threats of disciplinary actions and termination of their jobs, to input 30 minutes per day for lunch breaks when they did not take bona fide lunch breaks.

61. Plaintiff and other managers were thus forced under threats of disciplinary actions and termination of their jobs to work off the clock to avoid incurring overtime work hours. 62. Indeed, as Plaintiff routinely was expected and required to answer phone calls, emails and even return to the property or store while "on call", as they were precluded and discouraged from reporting overtime hours, they could not claim and report these compensable work hours and activities.

63. In fact, the Defendants had no means by which managers could report or claim overtime hours for the on call activities they incurred, despite the fact that Defendants knew that its managers were on call, handline and responding to calls and issues and problems outside their work schedules across the United States.

64. When Plaintiff and other managers upon information and belief would stay late, come in early and report overtime hours in order to complete their job duties and requirements, including apper work etc. they would be coached, warned and disciplined for claiming the overtime hours.

65. Each time a manager manually edited or removed overtime hours, or manually inputted 30 minute lunch breaks, Defendants knew and could see these punch changes and edits and that managers were editing off overtime hours.

66. Defendants did not discipline employees for these manual changes to the time sheets. 67. Defendants did not provide any forms or real or actual system or procedures to report and claim the on call work times, as doing so thus would all be overtime hours worked as they had to work 42.5 weekly work schedules.

68. Essentially, Defendants knowingly placed managers "between a rock and a hard place" having to take care of the stores, perform all their job duties and timely, or suffer discipline, despite the fact that managers would have to routinely stay late, come in early, and work through meal breaks.

**69.** Plaintiff and all others similarly situated were not executive or administrative exempt employees under the FLSA as they were not paid on a salary basis, and throughout their employment were in fact classified and treated as non-exempt hourly paid employees.

## FAILURE TO MAINTAIN TRUE & ACCURATE RECORDS OF HOURS WORKED

70. All employers subject to the FLSA must maintain and preserve certain records describing the wages, hours and working conditions of their employees.

71. Evidence reflecting the precise number of overtime hours worked by Plaintiff and every member of the Class, as well as the applicable compensation rates, is in the possession of Defendants.

72. However, and to the extent records are unavailable, Plaintiff and members of the Class may establish the hours they worked solely by their testimony and the burden of overcoming

Page **13** of **29**

such testimony shifts to the employer. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).

73. With respect to an employee subject to the FLSA provisions, the following records must be kept:

a. Personal information, including employee's name, home address, occupation, sex, and birth date if under nineteen (19) years of age;

b. Hour and day when workweek begins;

c. Regular hourly pay rate for any week when overtime is worked;

d. Total hours worked each workday and each workweek;

e. Total daily or weekly straight-time earnings;

f. Total overtime pay for the workweek;

g. Deductions from or additions to wages;

h. Total wages paid each pay period; and

i. Date of payment and pay period covered

74. Failure to comply with the recordkeeping requirements is a violation of the FLSA for which criminal or civil sanctions may be imposed, whether or not other statutory violations exist. *See,* 29 U.S.C. §215(a)(5); *See also,* Dunlop v. Gray-Goto, Inc., 528 F.2d 792 (10th Cir. 1976).

75. Accurate records are not only required for regulatory purposes, they are critical to an employer's defense of claims that it violated the FLSA. An employer that fails to maintain the required records cannot avoid liability in a wage-hour case through argument that there is insufficient evidence of the claimed hours worked. *See* Wirtz v. First State Abstract Ins. Co.,

362 F.2d 83 (8th Cir. 1966); Boekemeier v. Fourth Universalist Soc'y, 86 F. Supp. 2d 280 (S.D.N.Y. 2000).

76. An employer's failure to maintain records may create a presumption in the aggrieved employee's favor. *See* Myers v. The Copper Cellar Corp., 192 F.3d 546, 551 n.9 (7th Cir. 1999), *citing* Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).

77. Defendants have failed to accurately record, track and report the Plaintiff's and Class of similarly situated members' time and work hours as required under the FLSA. 78. Defendants commanded, instructed and pressured Plaintiff and all others similarly situated to remove and edit overtime hours from their time records and to input 30 minutes per day for lunches whether they took less than 30 minute lunches or no lunches at all. 79. Thus Defendants engaged in

falsification of its time records and violated the record keeping requirements of the FLSA,

80. Each week, managers would, by direction and pressure from their district managers and superiors, edit and remove overtime hours and/or adding in or editing time punches to remove overtime hours, and management and other officers and corporate employees would see and review the edited and shaved off overtime hours and manually change time sheets.

81. Managers as well were permitted to commence work prior to the shift times, work through the 30 minute provided lunch break, stay late, work on call away from the office and all while off the clock, just as long as each week their timesheets did not have more than 40 hours on it.

82. Defendant knew managers were doing these work activities performing work while off the schedule or while clocked out and did not discipline them for not reporting these on call hours or other off the clock work.

83. Defendants not only turned a blind eye to managers having to work on call without being paid, and working off the clock and working through lunches or working without 30 minutes of uninterrupted email beaks each day, but as per the De Facto Policy made it clear that if they did report overtime hours they would be subject to discipline, including termination of their employment..

84. The Culture of Defendant was made clear to Plaintiff: complete your job duties even though it requires you to work more than 40 hours each and every week and do not claim and report overtime hours or you will be fired.

85. Defendants discouraged Plaintiffs from reporting all their overtime hours worked and from submitting the overtime hours that were on the time sheets for payment under a De Facto Policy against paying overtime wages and a policy corporate created policy handed down to district management and then enforced against all store level managers.

86. Defendants have knowingly falsified their own time records and have unlawfully failed and refused to pay all ISR a premium for all overtime hours worked.

87. Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of 29 CFR §516.2 and 29 U.S.C. §§211, 216 and related laws.

88. Store managers and general managers were not in fact managers or executives as that term is defined pursuant to the FLSA, as their primary duty and primary job duties and

responsibilities primarily customer service, and they had no role in hiring, disciplining employees, scheduling, enforcement of policies and procedures against other employees, disciplining employees, setting comepantion or making recommendations for hiring, firing or disciplining employees.

89. Moreover, the manager positions were not paid on a salary basis, and managers were not able to make decisions without approval of their superiors and were subjected to daily supervision by their district managers.

90. During his employment with Defendants, Plaintiff's primary job duties were performing repetitive, laborious, and non-exempt work, such as, renting storage, customer service, cleaning the facility, stocking, inspections, and routine paperwork.

91. Plaintiffs' primary job duty was not managing and directing the work of two or more full time subordinate employees as defined under the FLSA.

92. Managers worked alone on 2 or more workdays, and at times when Plaintiff was without a store manager due to turnover, or manager being off for whatever reason, he worked more than 2 days alone or shifts without any other employee in the store.

93. Defendants knew that the customer service work performed by Store Managers and General Managers required them to be on call, working through meal breaks and thus routinely require working overtime hours either off the clock.

94. Defendants knew that the customer service work performed by Store Manager and General Managers required them to be on call, working through meal breaks and thus required

them to routinely make manual edits to their weekly time sheets to avoid incurring overtime hours.

95. Plaintiff would be subject to discipline if he did not handle phone calls and all other work related matters while on his days off or while off the clock or outside his shift times, but were discouraged and warned against claiming all such activities if that would result in them incurring overtime hours.

96. The Defendants have willfully violated and continue to violate §207 of the FLSA by failing to pay Plaintiffs and others similarly situated Managers overtime compensation for all hours

worked in excess of forty (40) per week.

97.  Upon information and belief, for the three (3) year period before this filing, (the "Class Period"), the continued violations of the FLSA §207 that are complained of herein have been practiced and imposed upon all Managers nationwide who have regularly worked in excess of forty (40) hours per week.

98.  The FLSA provides that, with certain exceptions, employers must pay employees overtime of at least one and one-half (1.5) times their regular rate of pay for any hours over forty (40) worked in a week. 29 U.S.C. S 207(a)(1). Although the FLSA provides for certain exemptions to the mandates of paying overtime compensation, no exemption applies in the instant matter.

99.  Unless proven to be exempt from the protection of overtime laws, all employees are entitled to premium overtime pay for work in excess of forty (40) hours per week.

100.  Plaintiff and members of the Class were, and continue to be, required to work more than forty (40) hours a week during the course of their employment with Defendants. 101. Plaintiff herein alleges on behalf of the members of the putative Class or collective of similarly situated, that Defendants' failure to pay overtime and other compensation was and is a knowing and willful violation of the overtime wage requirements of the FLSA. Accordingly, Plaintiff and the Class seek and are entitled to recover all overtime pay due from overtime hours worked for which compensation was not paid, an equal sum in liquidated damages, prejudgment interest, attorneys' fees and costs under the FLSA's three (3) year statute of limitations.

## FAILURE TO MAINTAIN TRUE & ACCURATE RECORDS OF HOURS WORKED

102. Evidence reflecting the precise number of overtime hours worked by Plaintiff and every member of the Class, as well as the applicable compensation rates, is in the possession of Defendants.

103. However, and to the extent records are unavailable, Plaintiff and members of the Class may establish the hours they worked solely by their testimony and the burden of overcoming such testimony shifts to the employer. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).

104. All employers subject to the FLSA must maintain and preserve certain records describing the wages, hours and working conditions of their employees.

105. With respect to an employee subject to the FLSA provisions, the following records must be kept:

a. Personal information, including employee's name, home address, occupation, sex, and birth date if under nineteen (19) years of age;

b. Hour and day when work week begins;

c. Regular hourly pay rate for any week when overtime is worked;

d. Total hours worked each workday and each workweek;

e. Total daily or weekly straight-time earnings;

f. Total overtime pay for the workweek;

g. Deductions from or additions to wages;

h. Total wages paid each pay period; and

i. Date of payment and pay period covered

106. Failure to comply with the recordkeeping requirements is a violation of the FLSA for which criminal or civil sanctions may be imposed, whether or not other statutory violations exist. *See,* 29 U.S.C. § 215(a)(5); *Also See,* Dunlop v. Gray-Goto, Inc., 528 F.2d 792 (10th Cir. 1976).

107. Accurate records are not only required for regulatory purposes, they are critical to an employer's defense of claims that it violated the Act. An employer that fails to maintain the required records cannot avoid liability in a wage-hour case through argument that there is insufficient evidence of the claimed hours worked. *See,* Wirtz v. First State Abstract Ins. Co., 362 F.2d 83 (8th Cir. 1966); Boekemeier v. Fourth Universalist Soc'y, 86 F. Supp. 2d 280 (S.D.N.Y. 2000).

108. An employer's failure to maintain records may create a presumption in the aggrieved employee's favor. *See,* Myers v. The Copper Cellar Corp., 192 F.3d 546, 551 n.9 (7th Cir. 1999), *citing* Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).

109. Defendants have failed to accurately record, track and report the Plaintiffs' and Class of similarly situated members' time and work hours as required under the FLSA. 110. Defendants have failed to make, keep and preserve records, with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of 29 CFR 516.2 and 29 U.S.C. §§ 211, 216 and related laws. **COLLECTIVE ACTION ALLEGATIONS**

111. Plaintiff brings this action individually and on behalf of a proposed Class or collective group as a collective action pursuant to the Fair Labor Standards Act. 29 USC § 216(b). 112. In

Young v. Cooper Cameron Corp., the court stated that: "The requirements of Fed. R. Civ. P. 23 do not apply to the approval of a collective action and thus no showing of numerosity, typicality, commonality and representativeness need be made." Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005).

113. Still, despite the Young Court's ruling, the members of the Class are so numerous that joinder of all members is impracticable and in the interests of justice, as well as in keeping with the legislature's intent in creating Collective Actions under Section 216(b) proceeding as a collective action is proper in this case. While the exact number of the members of the Class is unknown to the Plaintiff at this time, and can only be ascertained through appropriate discovery, upon information and belief, Plaintiffs believe that there are currently 2,200 or more individuals in the defined class, perhaps up to 3000 or more within the three (3) year relevant class period.

114. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel that is experienced and competent in class/collective actions and employment litigation. Plaintiff has no interest that is contrary to, or in conflict with, members of the Class.

115. A collective action suit, such as the instant one, is superior to other available means for a fair and efficient adjudication of this lawsuit. The damages suffered by individual members of the Class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Class to individually seek redress for the

wrongs done to them.

116. A collective action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy. Absent these actions, the members of the Class likely will not obtain redress of their injuries and Defendants will retain the proceeds from its violations of the FLSA.

117. Furthermore, even if any member of the Class could afford individual litigation against the Defendants, it would be unduly burdensome to the judicial system. The instant methodology, when compared to voluminous individual actions, has fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court. Concentrating this litigation in one forum will promote judicial economy and parity among the claims of individual members of the Class and provide for judicial consistency.

118. Upon information and belief, all Managers were trained in a similar manner and on an ad hoc basis, including Plaintiff, without any formalized training program. While Plaintiff and other Managers watched some training videos online, their real training came in the form of

General Managers such as Plaintiff acting as "trainers" and working with newly hired employees at their store for several days until they had learned the ropes and then released to work by themselves. There was no classroom type structured training program.

119. Managers were not put through any structured or instructor taught management training program, as the videos they reviewed were primarily for the purpose of demonstrating how the hourly work at the location was to be performed and the processes or procedures for or systems

involved.

120. Managers were not thereafter required to attend any subsequent management training. 121. The reports or reporting that Managers were required to complete involved data entry and inputting information into standardized reports or spreadsheets and did not involve Plaintiffs creating their own individualized reports using their judgment, analysis or recommendations.

122. Plaintiff, like other Managers, could not use either discretion to vary or deviate from the set schedules, come and go as he or she pleased, and were not salaried employees. He and all managers had to obtain District Manager approval if they were to be late or needed time off for any reason.

123. Managers were subject to discipline if they were late or sought to leave early and could not simply just leave the Defendant's location and take an uninterrupted 30 minute meal break if no one was in the store.

124. No prior management history or experience was required to be hired as a Manager. 125. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its continued maintenance.

126. Pursuant to 20 U.S.C. § 207, Plaintiffs seek to prosecute the FLSA claims as a collective action on behalf of:

> All persons employed by CUBESMART LP, CUBESMART MANAGEMENT LLC and all other subsidiaries and affiliates of Defendants as General Managers, Store Managers or Property Managers and any other job titles previously or now currently used to describe the same positions at any location, property of store owned or managed by Defendants in the United States and its territories, at any time within the three (3) years preceding this lawsuit to the day of trial.

127. Notice of the pendency and any resolution of this action can be provided to Collective

Action Members by mail, print, and/or internet publication.

### COUNT I – VIOLATION OF SECTION § 207 OF THE FLSA: FAILURE TO PAY OVERTIME WAGES

128. Paragraphs 1 through 127 are realleged and incorporated as if fully set forth herein. 129.

At all relevant times, Defendants employed Plaintiff, and/or each member of the Putative Class

of similarly situated and/or continues to employ members of the Class, within the meaning of

the FLSA.

130. Upon information and belief, all Managers were paid under a common and similar

compensation plan on a national set pay scale or national basis, comprised of a base hourly

pay, plus eligibility for some non-discretionary quarterly bonus, and classified as non-exempt

employees.

131. Defendants have a policy and practice of refusing to pay overtime compensation and a

premium to all Managers for the hours worked in excess of forty (40) hours per week,

regardless of the actual work duties performed.

132. Defendants permitted Plaintiff and all managers to suffer to work off the clock and without

being paid a premium or all hours worked.

133. Defendants maintained a De Facto Policy against reporting and/or claiming more than 40

hours of work on the time sheets, and discouraged them from reporting overtime hours worked.

134. Defendants maintained a De Facto policy of requiring each manager do deduct 30 minutes

of time each and every day from their timesheets for meal breaks regardless of whether they

took an uninterrupted meal break of 30 minutes or not.

135. Defendants reviewed the timesheets and time records of managers on a bi-weeily basis and could see all the edits, manual punches, after the fact entries of lunch breaks of 30 minutes, and removal of overtime hours but turned a blind eye to it and did not discipline employees for such changes.

136. Defendants failed to provide managers any real mechanism and opportunity to report and claim their on call work hours as doing so would put them into overtime hours and the Defendants maintained a policy against manages incurring and claiming or reporting overtime hours

137. Defendants knowingly and willfully failed to pay Plaintiffs and all other members of the Class overtime compensation at the appropriate legal rate for all hours they performed work on behalf of Defendants above and beyond forty (40) hours per workweek in violation of the FLSA; in particular 29 U.S.C. §§ 206 and 207.

138. Upon information and belief, even when magners did incur and were paid for overtime hours on the clock, Defendants underpaid Plaintiffs by failing to include the bonuses paid in the regular rate of pay calculations.

139. Defendants do not have a good faith basis under the FLSA for underpaying managers for overtime hours by failing to include the bonuses paid in the regular rate of pay calculation 140. Thus Plaintiff and all other managers are owed the balance of the underpaid overtime hours worked, plus an equal sum in liquidated damages.

141. The foregoing conduct herein and throughout this complaint, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

142. Upon information and belief, Defendants did not have any legal opinion it relied upon or other Department of Labor opinion to maintain its De Facto policies described herein and for failing to permit Plaintiffs the opportunity to report and claim on call hours, such that it cannot and does not have a good faith basis under the FLSA for classifying all as a class as exempt employees, and certainly not without undertaking any individualized analysis or assessment of each person and the work they were or would be doing.

143. Defendants took advantage of the persons they hired under the titles of Store Manager, General Manager or Property Manager for the purpose of increasing profits by saving many millions of dollars in overtime wages they would otherwise have to pay out for their work, knowing that all Managers would routinely be working over forty (40) hours each week.

144. In his message to Congress urging passage of the FLSA, President Roosevelt explained that the FLSA is intended to ensure workers "a fair day's pay for a fair day's work" because "[a] self-supporting and self-respecting democracy can plead no economic reason for chiseling workers' wages or stretching workers' hours." H.R. Rep. No. 101-260, at 8-9 (Sept. 26, 1989) (reprinted in 1989 U.S.C.C.A.N. 696, 696-97)

145. Thus Plaintiff and all others similarly situated were not paid a fair day's pay for a fair day's work in direct violation of the FLSA.

146. Defendants induced and mislead persons applying for and accepting the positions of

Managers into believing that they would be only required to work 40 hours per week, when in fact they knew that the position would require them to work through meal breaks, work on call, and and routinely work more than 40 hours a week but without being paid a premium for all hours worked.

147. Due to Defendants' willful FLSA violations, Plaintiff alleges individually and on behalf of the members of the Class that they have suffered damages and are entitled to recover from Defendants the unpaid overtime compensation, and an additional equal amount as liquidated damages, prejudgment interest, reasonable attorneys' fees, costs and disbursements of this action, pursuant to 29 U.S.C. §216(b).

**WHEREFORE** Plaintiff, Sheltalee Torres, individually and on behalf of all others similarly situated who consent to join this action, pray for and demands judgment forr:

a. An order designating this action as a collective action and issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals across the nation with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Join this action as Plaintiffs pursuant to §216(b); and that notice be sent to all past and present employees of Cubesmart any time during the three (3) year period immediately preceding the filing of this suit, through and including the date of this Court's issuance of the Court Supervised Notice;

b. An order awarding attorneys' fees and costs pursuant to § 216 of the FLSA; Page **27** of **29**

c. That the Court find Defendants in violation of the overtime compensation provisions of the FLSA and that the Court find that Defendants' violations of the FLSA were and are willful, and their class wide unlawful pay practices and De Facto policies is

and was without a good faith basis under the FLSA;

d. That the Court award Torres and the putative Class of all similarly situated employees overtime compensation for all the previous hours worked over forty (40) hours in each and every workweek that they did not receive at least a premium for, in any given week during the past three (3) years, AND an equal sum in liquidated damages. In addition, interest on said award pursuant to § 216 of the FLSA.

e. That the Court award Torres and all others similarly situated the balance of underpaid overtime hours, plus an equal sum in liquidated damages and attorney's fees and costs; and

f. That the Court award any other legal and equitable relief as this Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact and claims herein raised by this Complaint and on all other issues so triable.

**Dated: October 5, 2020.**

Page **28** of **29**

Respectfully submitted.

/s/Mitchell Feldman, Esq.
Mitchell L. Feldman, Esquire
Florida Bar No.: 0080349
FELDMAN LEGAL GROUP
6940 W. Linebaugh Ave, #101

Tampa, Florida 33625
Tel: 813-639-9366
Fax: 813-639-9376
Email: mlf@feldmanlegal.us
*Attorney for Plaintiff, and the class*
*Of similarly situated*